UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

IN RE:

CRAIG SCOTT TADDONIO                    Chapter 7 Proceeding

    Debtor,                                CASE NO. 8-16-74128-LAS
_____/

KENNETH BEANE,

    Plaintiff,                             Adversary Proceeding No.

v.

CRAIG SCOTT TADDONIO,

    Defendant.
_____/

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE

Plaintiff Kenneth Beane ("Beane") by and through undersigned counsel sues Defendant Craig Scott Taddonio ("Debtor") and further states:

1. On September 9, 2016, Debtor filed a voluntary petition ("Petition") for relief under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York.

2. On December 1, 2016 the Debtor's duly noticed Meeting of Creditors was held pursuant to Section 341 (a) of the United States Bankruptcy Code ("341 Meeting").

3. As of the date of this Complaint, Debtor has not been granted a discharge.

4. The Complaint is timely because the debt has yet to be discharged.

5. This is an adversary proceeding in which the Plaintiff/Creditor is objecting to

1

Debtor's discharge under Bankruptcy Code Section 727 and is seeking a determination as to the dischargeability of the debt owed by the Debtor to Plaintiff/Creditor under Bankruptcy Code Section 523(a) (19).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Bankruptcy Code Sections 523, 727 and 1328.

7. This case is a core proceeding pursuant to 28 U.S.C. Sections 157(b) (2) (I) and 157(b) (2) (J).

8. Plaintiff is over 18, sui juris and a resident of the State of Florida.

9. Plaintiff is a creditor due to the fact that he filed a Statement of Claim and commenced a FINRA arbitration proceeding under FINRA Case No. 15-02075. The matter was stayed as to the Debtor but proceeded to final hearing as to the remaining party Respondents.

10. Defendant is the Debtor in the above-styled matter and at all times has resided at 2 Salt Meadow Road, Babylon, NY 11702.

11. Plaintiff was the Defendant's customer and Defendant was the principal owner of Craig Scott Capital, LLC ("CSC") and direct supervisor over Plaintiff's broker (as well as all trading activities at the firm) during the time that Plaintiff maintained a brokerage account at CSC.

12. Sometime in early 2012 Plaintiff opened a brokerage account at CSC. CSC was a FINRA registered broker-dealer with its principal place of business located in Uniondale, NY. However, on January 28, 2016 CSC;'s FINRA membership was cancelled for numerous violations of FINRA rules and regulations, and state/federal securities laws.

13. Debtor was also the subject of that certain SEC Administrative Proceeding, File

No. 3-17206 in which an Order Instituting Administrative and Cease-and-Desist Proceedings, et al. was entered that imposed civil penalties of $25,000.00 against the Debtor for various violations of securities laws. The Debtor is also the subject of a FINRA Department of Enforcement proceeding in which numerous bad acts are alleged to have been conducted at the direction and under the supervision of, the Debtor. Some of the causes of action alleged by FINRA relate to acts involving fraud.

14. FINRA offers its customers and members the option of engaging in arbitration to resolve disputes related to the acts of its members, and current and former employees/agents also known as associated persons.

15. Debtor was the president, supervisor and chief compliance officer at CSC who directed a campaign to cold call potential customers for the purpose of convincing them to open securities accounts that CSC and its brokers would then churn for excessive commissions. In fact, a CSC broker Mr. Zachary Bader following the instructions of the Debtor targeted the Plaintiff and pressured him to invest a substantial amount of money in certain stocks related to the biotechnology sector. The Debtor encouraged "cold-calling" by his sales force to obtain clients like the Plaintiff. Moreover, at the direction of the Debtor, the broker ignored a "do not call" telemarketing restriction imposed by the Plaintiff, a violation of FINRA Rule 3230 and 2010.

16. The Debtor directed his broker to induce the Plaintiff into opening an account at CSC by making lofty promises as to the hefty returns on investments that the Plaintiff could expect to realize from the broker's trading. The Debtor encouraged the use of every high pressure sales tactic available to the broker-tactics that were taught to all CSC brokers by the Debtor.

17. Plaintiff had absolutely no experience in the type of highly speculative investing that the Debtor directed his broker to engage in on behalf of the Plaintiff. Thereupon, Plaintiff agreed to open an account with the Debtor. The Debtor then instructed the broker to have the Plaintiff sign blank new account forms which he then completed after the blank forms were returned signed by the Plaintiff.

18. Plaintiff did not realize that at the Debtor's direction, his broker Mr. Bader had overstated the Plaintiff's investor profile, annual income, net worth and risk tolerance in order to justify engaging in aggressive and highly speculative trading.

19. Furthermore, the Debtor instructed Mr. Bader to open margin and option accounts for the Plaintiff when the Plaintiff did not even understand the concept of margin and options trading.

20. All of these representations appeared on the new account forms without the knowledge of the Plaintiff. Plaintiff was later told by the broker not to worry and that the different designations and information that the Debtor had listed meant nothing and was a "mere formality".

21. The type of aggressive and highly speculative trading that the Debtor directed Mr. Bader to undertake was not in the best interests of the Plaintiff. Instead, Debtor's actions were intended to generate huge commissions and fees for the Debtor at the expense of placing the Plaintiff in extremely volatile stocks that carried a high risk of losses.

22. This pattern of deceit soon extended into the actual trading and account management conducted by the broker under the supervision of the Debtor. Almost every trade was executed without the Plaintiff's knowledge and involved highly speculative investments.

23. The Debtor intentionally failed to establish and enforce a reasonable supervisory system, including written supervisory procedures, designed to prevent the quantitative suitability (excessive trading) and fraudulent churning violations that had taken place in Plaintiff's accounts.

23. Despite numerous "red flags" of excessive trading and churning brought to his attention the Debtor did absolutely nothing to ensure that his brokers, including Mr. Bader with respect to Plaintiff's account, were making recommendations that were quantitatively suitable for customers like the Plaintiff.

24. Instead, the Debtor permitted Mr. Bader to trade the Plaintiff's accounts frequently, often relying heavily on margin making it nearly impossible under any established metric for the Plaintiff to earn a profit in his accounts. Moreover, at the direction of the Debtor, the broker continued to make unauthorized trades using the Plaintiff's margin account despite being told on three separate occasions by the Claimant to stop doing so. Instead, the Debtor pressed the broker to continue the reckless margin trading- all of which was to the detriment of the Plaintiff.

25. The Debtor knew this but took no meaningful steps to curb these trading abuses because to do so would have resulted in lower commissions and profits for the Debtor and his sales force. As a result, the Debtor failed to supervise in violation of NASD Rules 3010(a) and (b) and FINRA Rule 2010. At some point, the Plaintiff realized that his account equity had in fact disappeared due to Debtor's excessive commissions. Debtor kept promising the Plaintiff that he would be able to recoup all of the Plaintiff's losses and even turn those losses into gains!

26. The account was open only for 9 months from approximately February 2012

5

through November 2012. During that short period of time purchases of over **$1.8 Million** were made by the broker with commissions and margin interest/fees amassed in an amount that exceeded $57,758.85 and a net out of pocket loss of ($80,970.05). This was the culture that permeated the Debtor's business and it is he who is completely responsible for fostering same.

27. Accordingly, Plaintiff directed the undersigned to file a multi-count Statement of Claim with FINRA Dispute Resolution in order to engage in arbitration as required of all FINRA members, associated persons and their customers.

28. On August 5, 2015 Plaintiff filed a multi-count Statement of Claim, FINRA Case No. 15-02075 against the Debtor alleging the following cases of actions, to wit: churning/excessive trading, unauthorized trading, breach of fiduciary duty and misrepresentation. Each of these causes of action describe acts of fraud, deceit, manipulation of purchases and sales of securities as well as violations of state and federal securities laws that are in fact recognized as grounds to contest the dischargeability of certain debts that the Debtor has disclosed in his bankruptcy petition. An Amended Statement of Claim was then filed on October 17, 2016 to add certain new parties.

29. A hearing was conducted in the underlying arbitration proceedings with the panel entering an award of compensatory damages in favor of the Plaintiff in the amount of $80,970.05, punitive damages of $81,000.00 expert witness fees of $4,025.00 and attorneys' fees of $36,400.00 jointly and severally as to all of the remaining Respondents. A copy of the award is attached hereto as Exhibit A.

30. Most importantly, the award noted that the remaining Respondents had all engaged in the "…willful, wanton, reckless disregard for customers and fraud."

**Count I-Non-Dischargeability of Plaintiff's Arbitration Proceedings
Under Section 523(a) (19) of the Bankruptcy Code**

Plaintiff repeats and re-alleges Paragraphs 1-30 of this Complaint as if set forth herein and further states:

31.     Bankruptcy Code Section 523 (a) (19) provides in relevant part that an individual debtor cannot obtain a discharge of any debt that --

(A) is for-

(i) the violation of any of the Federal securities laws...; or

(ii) common law fraud, deceit or manipulation in connection with the purchase or sale of any security; and

(B) results before, on, or after the date on which the petition was filed, from-

(i) any judgment, order, consent order, or decree entered in any Federal or state judicial or administrative proceeding; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost or other payment owed by the debtor.

32.     All of the debt owed to the Plaintiff by the Debtor is non-dischargeable as it is a debt related to a violation of a securities law and is for common law fraud, deceit or manipulation connected to the purchase and sale of securities that resulted in Plaintiff incurring monetary damages of $252,193.83.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment determining that the above referenced FINRA arbitration reflected on Debtor's schedules be deemed non-dischargeable under Bankruptcy Code Sections 523(a) (19) and granting any other relief that the Court may deem appropriate.

35. Bankruptcy Code Section 523 (a) (2) (A) provides in relevant part that

(a) A discharge under section 727, 1141, 1228 (a), 1228 (b) or 1328 (b) of this title does not discharge an individual debtor from any debt--

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by --

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...

36. All or part of the debt owed to Plaintiff, as evidenced by the Award entered against the remaining Respondents would certainly have been found to be owed by the Debtor. As such, said debt is non-dischargeable as it is a debt for money that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code Section 523 (a) (2) (A).

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment determining that the above referenced FINRA arbitration reflected on Debtor's schedules be deemed non-dischargeable under Bankruptcy Code Sections 523(a) (2) (A) and granting any other relief that the Court may deem appropriate.

I hereby certify that I am admitted to the Bar of the United States District Court for the Eastern District of New York, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule ___.

> **Hilton Wiener, LLC**
> Attorney for Plaintiff
> 244 Fifth Avenue, Suite A-176
> New York, NY 10001
> (561) 750-6672
> hilton@hiltonwienerlaw.com
>
> By: /s/ Hilton Wiener
>     Hilton Wiener, Esq.
>     New York Bar ID 1560978

### Count II-Non-Dischargeability of Plaintiff's Arbitration Proceedings
### Under Section 523(a) (2) (A) of the Bankruptcy Code

Plaintiff repeats and re-alleges Paragraphs 1-30 of this Complaint as if set forth herein and further states:

33.    Bankruptcy Code Section 523 (a) (4) provides in relevant part that an individual debtor cannot obtain a discharge of any debt that

> (a) A discharge under section 727, 1141, 1228(a), 1228 (b) or 1328 (b) of this title does not discharge an individual debtor from any debt--
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny…

34.    The Award entered as to the remaining Respondents found them all to have committed acts of fraud. There is no question that the Debtor would also have been found to have engaged in the same conduct giving rise to a finding of fraud. Therefore, all or part of the debt owed to the Plaintiff as described in the Amended Statement of Claim is non-dischargeable as it is a debt related to fraud in a fiduciary capacity within the meaning of Bankruptcy Code Section 523 (a) (4).

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment determining that the above referenced FINRA arbitration reflected on Debtor's schedules be deemed non-dischargeable under Bankruptcy Code Sections 523(a) (4) and granting any other relief that the Court may deem appropriate.

### Count III-Non-Dischargeability of Plaintiff's Award
### Under Section 523(a) (4) of the Bankruptcy Code

Plaintiff repeats and re-alleges Paragraphs 1-30 of this Complaint as if set forth herein and further states:

B1040 (FORM 1040) (12/15) ADVERSARY PROCEEDING COVER SHEET          ADVERSARY PROCEEDING NUMBER
(Instructions on Reverse)                                            (Court Use Only)

| PLAINTIFFS<br>Kenneth Beane | DEFENDANTS  Craig Taddonio |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Hilton Wiener, Esq.<br>244 Fifth Ave., Suite A-176<br>New York, NY 10001 (561) 750-6672 | ATTORNEYS (If Known)<br>Neil R. Flaum, Esq.<br>44 Plymouth Avenue<br>Yonkers, NY 10710 (212) 509-7400 |
| PARTY (Check One Box Only)<br>o Debtor    o U.S. Trustee/Bankruptcy Admin<br>X Creditor  o Other<br>o Trustee | PARTY (Check One Box Only)<br>X Debtor    o U.S. Trustee/Bankruptcy Admin<br>o Creditor  o Other<br>o Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Action to Determine Dischargeablity of Debt

(as 2, second alternative cause as 3, etc.)

**FRBP 7001(1)   Recovery of Money/Property**
D 11-Recovery of money/property - §542 turnover of property
D 12-Recovery of money/property - §547 preference
D 13-Recovery of money/property - §548 fraudulent transfer
D 14-Recovery of money/property - other

**FRBP 7001(2)- Validity, Priority or Extent of Lien**
D 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
D 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4)- Objection/Revocation of Discharge**
D 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5)- Revocation of Confirmation**
D 51-Revocation of confirmation

**FRBP 7001(6)- Dischargeability**
D 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
D 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
D 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
(continued next column)

**FRBP 7001(6)- Dischargeability (continued)**
D 61-Dischargeability §523(a)(5), domestic support
D 68-Dischargeability - §523(a)(6), willful and malicious injury
D 63-Dischargeability - §523(a)(8), student loan
D 64-Dischargeability §523(a)(15), divorce or separation obligation (other than domestic support)
X 65-Dischargeability - other

**FRBP 7001(7)- Injunctive Relief**
D 71-Injunctive relief- imposition of stay
D 72-Injunctive relief- other

**FRBP 7001(8) Subordination of Claim or Interest**
D 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
D 91-Declaratory judgment

FRBP 7001(10) Determination of Removed Action
D 01-Determination of removed claim or cause

**Other**
D SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| o Check if this case involves a substantive issue of state law | o-Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| o Check if a jury trial is demanded in complaint | Demand $100,000 |
| Other Relief Sought | |

RECEIVED 2017 MAY 31 P 3:19 CLERK U.S. BANKRUPTCY COURT EASTERN DISTRICT OF NEW YORK

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR Craig Taddonio | | B KRUPTCY CASE NO. 8-16-74128-las | |
| DISTRICT IN WHICH CASE IS PENDING Eastern District of NY | | DIVISION OFFICE Central Islip | NAME OF JUDGE LAS |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF Jonathan Byrd, David Hug Robert Abrahamsen | DEFENDANT Craig Taddonio | | ADVERSARY PROCEEDING NO. To be filed |
| DISTRICT IN WHICH ADVERSARY IS PENDING EDNY-Central Islip | | DIVISION OFFICE | NAME OF JUDGE LAS |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) /s/ Hilton Wiener | | | |
| DATE 5/31/17 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) Hilton Wiener | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiffs attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is prose, that is, not represented by an attorney, the plaintiff must sign.